CRIMINAL COMPLAINT
(Submitted electronically)

| United States District Court | DISTRICT of ARIZONA |
|---|---|
| **United States of America**<br>v.<br>**Gary Noel Dufresne**<br>DOB: 1951; U.S. Citizen | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br>26-05627MJ |

Complaint for violations:  Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii)
Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Count One:  On or about January 17, 2026, at or near Lukeville, in the District of Arizona, **Gary Noel Dufresne** did knowingly and intentionally possess with intent to distribute 50 grams or more of methamphetamine, or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(viii).

Count Two:  On or about January 17, 2026, at or near Lukeville, in the District of Arizona, **Gary Noel Dufresne** did knowingly and intentionally possess with intent to distribute a quantity of  a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

On January 17, 2026, at approximately 9:50 a.m., Gary Noel DUFRESNE entered the United States from the Republic of Mexico at the Port of Entry in Lukeville, Arizona.  DUFRESNE was driving a gray 2010 Honda Civic bearing a temporary Arizona license plate.  During the primary inspection, DUFRESNE told a Customs and Border Patrol (CBP) officer that the vehicle was his but is registered to someone else.  DUFRESNE said he purchased the vehicle from someone selling cars on the side of the road in Mexico the week before.  A CBP canine, trained to detect the odor of narcotics, alerted to a trained odor emanating from an area near the rocker panels on the passenger side of the vehicle.  A CBP officer noticed that DUFRESNE appeared to be nervous because he was trying to distract the canine while the canine was inspecting the vehicle.  Officers x-rayed the vehicle, and the analysis of the images was inconclusive.  During a secondary inspection, DUFRESNE told a CBP officer that he was going to Scottsdale, Arizona to play golf.  Officers drilled into the rocker panel of the vehicle and observed a white crystal-like substance on the drill bit when the bit was removed from the vehicle.  Officers removed the driver's seat and noticed an area under the seat belt that did not appear normal.  Officers tapped the area with a hammer, and a piece of metal with bondo fell off.  Officers observed bundles of suspected narcotics through the hole in the side of the rocker panel. Officers removed a total of 34 packages of suspected narcotics from the vehicle.  Representative samples of the contents of the packages were field tested and yielded positive results for the properties of methamphetamine and cocaine.  Thirty-three (33) packages contained methamphetamine and weighed 17.03 kilograms. One package contained cocaine and weighed 420.7 grams.

CONTINUED ON NEXT PAGE

MATERIAL WITNESSES IN RELATION TO THE CHARGE:

| DETENTION REQUESTED<br>Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title)<br>JEREMIAH P CAREN  *Digitally signed by JEREMIAH P CAREN Date: 2026.01.20 12:06:26 -07'00'* |
|---|---|
| | OFFICIAL TITLE<br>Special Agent Jeremiah Caren<br>Homeland Security Investigations |

**Sworn to telephonically.**

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>*Lynnette C. Kimmins* | DATE<br>January 20, 2026 |
|---|---|

[1]    See Federal Rules of Criminal Procedure Rules 3, 4.1 and 54

Reviewed by AUSA Price

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED CONTINUED:

After waiving his *Miranda* rights, DUFRESNE stated he lives in Mexico full time. DUFRESNE stated he is retired but he has tried different business investments. DUFRESNE said he buys vehicles from auction, salvage titles only, from the United States, and brings them down into Mexico. DUFRESNE said his bank account is screwed up because his ATM card is shut down. DUFRESNE stated one of the reasons he was going to Phoenix was to go to the bank to try to get money, and to show his ID so the bank will release his ATM card so that he can access an ATM in Mexico.

DUFRESNE said he met a man who owns a taxi business, and he (DUFRESNE) began driving a taxi in Rocky Point. DUFRESNE said he then began working with a friend importing cars to Mexico from auctions. DUFRESNE said he bought four cars and a taxi. DUFRESNE stated he got ripped off by someone because he sold two of the cars but did not get paid. DUFRESNE said someone he was working with took his ATM card and smashed it, leaving him with no access to his bank. DUFRESNE claimed he was taken for about $15,000 dollars. DUFRESNE told interviewing agents that the other two cars he purchased both have mechanical issues and are being fixed. DUFRESNE made it a point to say this to establish he has no working vehicles other than the taxi, which DUFRESNE said he wouldn't drive into the United States.

DUFRESNE told agents there are a lot of people who need stuff taken up to Phoenix or taken from the United States to Mexico. DUFRESNE continued to state this is why he needed a vehicle, and this is what led to him getting the 2010 Honda Civic that he used to enter the U.S. on this occasion. DUFRESNE said he asked his business partner to find him a vehicle to drive from Mexico into the United States. DUFRESNE stated that an unknown subject dropped off the Honda Civic for him. DUFRESNE stated the first time he crossed the border in the vehicle, he went to the DMV to register the vehicle in his name. He stated the DMV denied his request and told him he needed to go back down to the Port of Entry in Lukeville to obtain importation papers for the vehicle. DUFRESNE stated after this, he met with his business partner and told his partner he needed import papers. DUFRESNE said his business partner took the car to straighten the paperwork out. DUFRESNE claimed his business partner gave the vehicle back the night before he entered the U.S. on this occasion. Later in the interview, DUFRESNE stated his business partner was not the person who picked up or dropped off the vehicle to DUFRESNE, and that his business partner was acting as a middleman. DUFRENSE stated an unidentified person dropped off the vehicle to DUFRENSE around 11:00 p.m. the night before DUFRESNE was stopped at the Port of Entry.